MICHAEL J. LAPIA, JR. *v.* TOWN OF
STRATFORD ET AL.
(AC 16373)

Foti, Landau and Hennessy, Js.

Argued October 28—officially released December 30, 1997

*J. Brendan Sharkey*, for the appellant (plaintiff).

*Harold Brienes*, pro se, the appellee (intervening defendant).

*Opinion*

FOTI, J. The plaintiff, Michael J. LaPia, Jr., appeals from a decision rendered by the compensation review board (board) affirming the commissioner's order awarding attorney's fees of $41,732 to the plaintiff's former attorney, Harold Brienes.

On appeal, the plaintiff claims that the board improperly determined (1) that workers' compensation commissioner John A. Arcudi had jurisdiction to order an award of attorney's fees, and (2) that Arcudi did not engage in improper ex parte communications with Brienes. Because we agree with the second of those claims, we reverse the board's decision and remand the case for further proceedings.

An examination of the board's record reveals the following facts. In 1991, the plaintiff suffered a work-related injury while in the employment of the named defendant town of Stratford (town). In June, 1994, the plaintiff entered into an "Attorney-Client Employment Agreement" with Brienes to represent him in his claims against the town for workers' compensation benefits and a disability pension. The parties subsequently agreed to submit the action to the workers' compensation commission (commission) to oversee the terms of a global settlement. At the time the parties submitted the action to the commission, Arcudi was the acting commissioner for the fourth district.

On March 17, 1995, a meeting was held to discuss a settlement of the plaintiff's claims against the town. The plaintiff was represented by Brienes. On March 18, 1995, the plaintiff terminated his client relationship with Brienes. Sometime between March 18 and May 4, 1995, Arcudi was reassigned to the seventh district by the chairman of the commission. Following Arcudi's reassignment, Brienes contacted him by telephone to request his assistance in obtaining fees for Brienes' previous service to the plaintiff.

The parties executed a voluntary agreement that was approved by the new commissioner for the fourth district, Frank J. Verrilli, on May 4, 1995, following a formal hearing. Brienes was present at the hearing and argued that approval of the voluntary agreement should be delayed pending full payment of his attorney's fees, and that the matter should be transferred to Arcudi for final approval of the voluntary agreement. Verrilli denied Brienes' request to transfer the matter to Arcudi, but ordered that a $25,000 escrow account be established to protect Brienes' interests. The terms of the escrow agreement state that "[t]he money will be protected and disbursed upon settlement of the claim for attorney's fees." Following the May 4, 1995 hearing, Brienes

wrote to Arcudi to inform him of Verrilli's award and establishment of an escrow account and to request that Arcudi enter an order awarding him attorney's fees. On June 5, 1995, Arcudi sent a letter to the plaintiff, which began: "Attorney Brienes has asked me to set an attorney's fee in the [present] matter." Arcudi then went on to estimate that the settlement package, approved by Verrilli, was "worth well over $250,000." On the basis of his estimate of the value of the settlement, Arcudi set a fee of $40,000, plus the reimbursement of Brienes' out-of-pocket expenses in the amount of $1732.[1]

On June 14, 1995, the plaintiff petitioned the board to review Arcudi's award of attorney's fees. On November 17, 1995, the board granted Brienes' motion to be made a party defendant.

We first set forth our standard of review. "The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . The compensation review [board] must review the appeal on the record and must not retry [the] facts." (Citations omitted; internal quotation marks omitted.) *Green* v. *General Dynamics Corp.*, 44 Conn. App. 112, 115, 687 A.2d 550 (1996), cert. granted on other grounds, 240 Conn. 916, 692 A.2d 813 (1997).

The plaintiff first claims that Arcudi did not have jurisdiction to award attorney's fees because he presided over formal hearings in this case while assigned to the fourth workers' compensation district, and subsequently issued his order regarding attorney's fees while assigned to the seventh district. The board rejected the plaintiff's argument stating that "[General Statutes]

---

[1] Arcudi credited the plaintiff with the $6000 retainer previously paid to Brienes. Therefore, the net payment ordered by Arcudi amounted to $35,732.

§ 31-280 (b)[2] allows trial commissioners to be transferred between districts. Certainly, a trial commissioner is permitted to make a determination on a case which he has presided over even after he has been transferred to another district."

The plaintiff concedes in his brief that the board's conclusion is an accurate expression of the law and that workers' compensation commissioners retain statewide jurisdiction. Nevertheless, the plaintiff claims that Arcudi failed to assert his authority to retain jurisdiction in this case because he neither ordered the parties to continue to submit their "findings" to him after his reassignment to the seventh district nor objected to Verrilli's assumption of the case in the fourth district. The plaintiff's claim, therefore, is not that Arcudi, after having been transferred to another district, could not retain jurisdiction to act in this matter, but rather that he failed to satisfy the prerequisites of jurisdiction.

The plaintiff provides no authority for his claim that to retain jurisdiction Arcudi was required either (1) to order the parties to submit subsequent filings to him after his reassignment or (2) to object to Verrilli's assumption of the case. Moreover, the board approved Arcudi's exercise of jurisdiction when it affirmed his decision and stated that "[c]ertainly, a trial commissioner is permitted to make a determination on a case which he has presided over even after he has been transferred to another district."

---

[2] General Statutes (Rev. to 1995) § 31-280 (b) provides in relevant part: The chairman of the Workers' Compensation Commission shall:

"(1) Establish workers' compensation districts and district offices within the state and assign compensation commissioners to the districts to hear all matters arising under this chapter within the districts . . .

"(14) Control the hearing calendars of the compensation commissioners, and if necessary, preside over informal hearings in regard to compensation under the provisions of this chapter in order to facilitate the timely and efficient processing of cases . . . ."

Our Supreme Court has consistently stated that "[an appellate court] must accord great deference to the construction given a statute by the agency charged with its enforcement. *Preston* v. *Dept. of Environmental Protection*, 218 Conn. 821, 830, 591 A.2d 421 (1991). That principle applies with even greater force to the agency's interpretation through its own duly adopted regulations which have the same force and effect of law unless they are shown to be inconsistent with the authorizing statutes. *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986)." *Commission on Human Rights & Opportunities* v. *Windsor Hall Rest Home*, 232 Conn. 181, 196 n.1, 653 A.2d 181 (1995) (*Berdon, J.*, dissenting); see *Dept. of Utilities* v. *Carothers*, 28 Conn. App. 674, 682, 613 A.2d 316 (1992), citing *State* v. *Lang*, 23 Conn. App. 272, 277, 580 A.2d 71 (1990) (courts give great deference to construction of statute by agency charged with its enforcement).

Because the plaintiff has failed to provide support for his claim that Arcudi was required to satisfy certain prerequisites of jurisdiction and has conceded that workers' compensation commissioners retain state-wide jurisdiction, we affirm the decision of the board that Arcudi had jurisdiction to order an award of attorney's fees.

The plaintiff next claims that Arcudi engaged in improper ex parte communications with Brienes on two occasions. The first occurred when Brienes telephoned Arcudi to request his assistance in Brienes' fee dispute with the plaintiff. The second took place after the May 4, 1995 hearing before Verrilli, when Brienes wrote to Arcudi to inform him of the outcome of the hearing and to request that Arcudi enter an order awarding him attorney's fees.

General Statutes § 4-181 (a) provides: "Unless required for the disposition of ex parte matters authorized by law, no hearing officer or member of an agency who, in a contested case, is to render a final decision or to make a proposed final decision shall communicate, directly or indirectly, in connection with any issue of fact, with *any person* or party, or, in connection with any issue of law, with any party or the party's representative, *without notice and opportunity for all parties to participate.*" (Emphasis added.) Subsection (c) of § 4-181 provides in relevant part: "Unless required for the disposition of ex parte matters authorized by law, no party *or intervenor* in a contested case, no other agency, and *no person who has a direct or indirect interest in the outcome of the case,* shall communicate, directly or indirectly, in connection with any issue in that case, with a hearing officer . . . *without notice and opportunity for all parties to participate in the communication.*" (Emphasis added.)

This case is complicated by the fact that the communications objected to by the plaintiff were made to a commissioner who was no longer presiding over the contested case between the plaintiff and the defendant town, and by the fact that the second communication was made after the May 4, 1995 hearing at which a stipulation was executed resulting in a settlement of the plaintiff's claims against the town. It is undisputed, however, that the communications were made to a commissioner who ultimately issued an order awarding attorney's fees in the amount of $41,732 to Brienes.

In *Henderson v. Dept. of Motor Vehicles,* 202 Conn. 453, 458, 521 A.2d 1040 (1987), our Supreme Court stated: "Long before the advent of § 4-181 it had been held that a fundamental requirement of a fair administrative hearing is that 'the one who decides shall be bound in good conscience to consider the evidence, to be guided by that alone, and to reach his conclusion

uninfluenced by extraneous considerations . . . .' *Morgan* v. *United States*, 298 U.S. 468, 480, 56 S. Ct. 906, 80 L. Ed. 1288 (1936). 'Nothing can be treated as evidence which is not introduced as such.' Id. Ex parte communications with persons outside the agency are plainly improper under this standard for administrative adjudication. Even in the absence of such a statute, therefore, an ex parte communication by an adjudicator concerning a case before him would indicate that the decision had been 'made upon unlawful procedure,' a ground for reversal or modification specifically mentioned in [General Statutes § 4-183 (j) (3)]. A plaintiff who also showed 'substantial prejudice' to his rights, satisfying the predicate established by [§ 4-183 (j)] for relief upon any of the grounds enumerated therein, would thus be entitled to reversal or modification of the agency decision quite apart from § 4-181." In *Henderson* v. *Dept. of Motor Vehicles*, supra, 460, our Supreme Court held that once a "violation of § 4-181 has been proved by the party seeking relief, the burden shifts to the agency to prove that no prejudice has resulted from the prohibited ex parte communication." The rationale behind the court's decision to shift the burden to the agency was that "an adjudicating official may not ordinarily be subjected to inquiry concerning the mental process used in reaching a decision. *United States* v. *Morgan*, 313 U.S. 409, 422, 61 S. Ct. 999, 85 L. Ed. 1429 (1941)." *Henderson* v. *Dept. of Motor Vehicles*, supra, 459.

In rejecting the plaintiff's claim that the ex parte communications between Arcudi and Brienes resulted in a denial of his due process rights, the board implied that the plaintiff had waived his due process rights by directly appealing the commissioner's decision to the board rather than requesting a formal hearing before Arcudi. Even if we assume that the plaintiff was entitled to a hearing before Arcudi, such a hearing would not

have cured the procedural deficiencies that resulted in the original order of attorney's fees.

Both our Supreme Court and the United States Supreme Court have stated: "The right to a hearing embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them. *Leib* v. *Board of Examiners for Nursing*, 177 Conn. 78, 82, 411 A.2d 42 (1979), quoting *Morgan* v. *United States*, 304 U.S. 1, 18, 58 S. Ct. 773, 82 L. Ed. 1129 [(1938)]." (Internal quotation marks omitted.) *Martone* v. *Lensink*, 207 Conn. 296, 303, 541 A.2d 488 (1988). "The right to judicial review is impeded if the reasons for an agency's actions are not accessible through a record. . . . [Section 4-181] is intended to preclude litigious facts reaching the deciding minds without getting into the record. . . . The purposes of § 4-181 are to prevent one party from exerting improper influence on the decisionmaker . . . and to ensure that the reasons underlying his or her decision are on the record. . . ." (Citations omitted; internal quotation marks omitted.) Id.

Because there is no record through which the plaintiff could determine the basis of Arcudi's decision, he would have no way to challenge its reasonableness or to determine whether it was improperly influenced by ex parte communications with Brienes. Therefore, the plaintiff's decision to forgo a formal hearing before Arcudi did not represent a waiver of his procedural due process rights. In addition, once the plaintiff established a prima facie violation of § 4-181, the board was required to shift the burden to Brienes to make an evidentiary showing to rebut an inference of prejudice by demonstrating that Arcudi's decision was not adversely affected by the ex parte communications.[3] See *Martone*

---

[3] We recognize that it would be difficult, if not impossible, for Brienes to rebut the inference of prejudice in this case, given the fact that Arcudi's order was issued in response to a request from Brienes and that the amount

v. *Lensink,* supra, 207 Conn. 305; *Henderson* v. *Dept. of Motor Vehicles,* supra, 202 Conn. 460.

"[Workers'] compensation commissioners are not bound by the ordinary common law or statutory rules of evidence or procedure, but shall make inquiry in such manner, through oral testimony or written and printed records, as is best calculated to ascertain the substantial rights of the parties and carry out justly the spirit of this chapter. General Statutes § 31-298. Nonetheless, procedural due process is a requirement of adjudicative administrative hearings, including those held before [workers'] compensation commissioners, and the admission of hearsay material such as letters without an opportunity to cross-examine is ordinarily a deprivation of procedural due process. *Richardson* v. *Perales,* 402 U.S. 389 [402–407], 91 S. Ct. 1420, 28 L. Ed. 2d 842 [1971]; *Goldberg* v. *Kelly,* 397 U.S. 254, 267–70, 90 S. Ct. 1011, 25 L. Ed. 2d 287 [1970]; *Welch* v. *Zoning Board of Appeals,* 158 Conn. 208, 212, 257 A.2d 795 [1969]; *Conley* v. *Board of Education,* 143 Conn. 488, 495, 123 A.2d 747 [1956]." (Internal quotation marks omitted.) *Balkus* v. *Terry Steam Turbine Co.,* 167 Conn. 170, 177, 355 A.2d 227 (1974). General Statutes § 31-298 provides in relevant part that "[i]n all cases and hearings under the provisions of [the Workers' Compensation Act], the commissioner shall proceed, so far as possible, in accordance with the rules of equity. . . ." Our Supreme Court has stated that "no matter shall be decided unless the parties have fair notice that it will be presented in sufficient time to prepare themselves upon the issue." *Osterlund* v. *State,* 129 Conn. 591, 596, 30 A.2d 393 (1943); *Simmons* v. *Bonhotel,* 40 Conn. App. 278, 287–88, 670 A.2d 874 (1996).

In the present case, Arcudi's unilateral order awarding Brienes legal fees in the amount of $41,732 was

---

of out-of-pocket expenses awarded by Arcudi was the exact figure recited by Brienes in his May 4, 1995 letter to Arcudi.

made without any notice to the plaintiff or opportunity to present evidence. In fact, Arcudi never discussed the issue of attorney's fees with the plaintiff at any time before or after his June 5, 1995 order. Thus, the commissioner's order effected a denial of the plaintiff's right to due process of law.

The decision of the workers' compensation review board is reversed and the case is remanded with direction to vacate the commissioner's June 5, 1995 order awarding attorney's fees and to return the case to the commissioner for a formal hearing regarding the appropriate amount of attorney's fees.

In this opinion the other judges concurred.